## LEONG KWAI YIN v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit.
March 25, 1929.

Rehearing Denied April 22, 1929.

No. 5581.

Peters & O'Brien, of Honolulu, Hawaii, for appellant.

Sanford B. D. Wood, U. S. Atty., and Charles H. Hogg, Asst. U. S. Atty., both of Honolulu, Hawaii, and George J. Hatfield, U. S. Atty., and Geo. M. Naus, Asst. U. S. Atty., both of San Francisco, Cal.

Before RUDKIN and DIETRICH, Circuit Judges, and BEAN, District Judge.

RUDKIN, Circuit Judge. This is an appeal from an order of deportation made and entered in the United States District Court for the Territory of Hawaii. On January 16, 1924, the appellant, a person of Chinese descent, arrived at the port of Honolulu from China and was regularly admitted to the territory by a Board of Special Inquiry upon proof that he was Hawaiian-born. February 25, 1927, he was arrested upon a complaint charging that he was unlawfully in the United States and within the jurisdiction thereof, and the order of deportation followed.

In Lun Man Shing v. United States, 29 F.(2d) 500, this court held that a certificate of identity issued to a Chinese person, pursuant to rules promulgated by the Bureau of Immigration, is prima facie evidence of the right of the holder of the certificate to be and remain in the United States until overcome by proof tending to show that the certificate was issued improvidently, or was fraudulently obtained. A similar ruling was made in Choy Yuen Chan v. United States, 30 F.(2d) 516 decided by this court January 14, 1929, where it was further held that certain testimony offered by the government was insufficient to overcome the prima facie presumption created by the finding of the Board of Special Inquiry at the time of admission. On the argument before this court it was practically conceded that these two cases are controlling here, unless the effect of the decision of the Board of Special Inquiry, admitting the appellant, and the certificate of identity issued to him, is impaired or destroyed by erroneous decisions made by the same Board of Special Inquiry at or about the same time in other Chinese immigration cases. Upon the hearing in the court below, the records in the other cases were admitted in testimony, and disclose the following facts:

Leong Hou, a Chinese person, returned to China from Honolulu on November 8, 1899, accompanied by his wife and two children. The appellant claims to be and was admitted to the territory as the elder of these children. There have also been admitted to the territory a considerable number of persons of Chinese descent, each representing himself to be one or other of the children who returned to China with their parents November 8, 1899. The government contends that the number thus admitted was 13, but this depends in a large measure on whether one or two Chinese persons returned to China at that time bearing the name Leong Hou or How. If but one person returned bearing those names, the different records disclose a wide discrepancy in his description. Thus the record in this case gives the name as Leong Hou, the marriage name as Leong Yet Put, the age, at the time of the hearing, as 59, and the occupation as shoemaker; while the record in the case of Leong Wah Sut, submitted to this court at the same time, gives the name as Leong How, the marriage name entirely different, the age as 76 or 77, and the occupation as tailor.

Without attempting to determine, from the complicated record before us, the exact number of Chinese persons erroneously admitted, we deem it sufficient to say that the records in this and other cases in this court clearly demonstrate that the administration of the immigration laws in that territory during that period was extremely lax. Leong Kim Wai v. Burnett (C. C. A.) 23 F.(2d) 769; Lee Sai Ying v. United States (C. C. A.) 29 F.(2d) 108. But, as said in these cases: "Of course, the appellant should not be deported because of the numerous frauds thus perpetrated by others; but the circumstances were such that it behooved the court below, and now behooves this court, to scrutinize the record with the utmost care, to the end that the exclusion and immigration laws may not be set at naught in that territory or elsewhere." Here, the record is fair upon its face. It discloses no grounds for deportation. The decision of the Board of Special Inquiry, admitting the appellant, and his certificate of identity, are in no wise impeached for either fraud or error, and, if this appellant may be deported on such a record, there is no reason why every other Chinese person admitted to the territory during the same period, because of his Hawaiian birth, may not be deported because of the

laxity of the administration of the law, and for no other reason. In such a view we cannot concur.

█ It is finally contended that the appellant forfeited his citizenship in some way by remaining in China for a period of three years after attaining his majority. This question was raised for the first time in this court, and the appellant was given no opportunity to meet it; but section 2 of the Act of March 2, 1907, 34 Stat. 1228 (8 USCA § 17), provides that any American citizen shall be deemed to have expatriated himself when he has been naturalized in any foreign state in conformity with its laws, or when he has taken an oath of allegiance to any foreign state, and, whatever views may have heretofore been entertained, it seems to us that this statute was enacted for the express purpose of removing any doubt on that subject, and to prescribe the only means by which the expatriation of a native-born American citizen may be accomplished.

The judgment of the court below is reversed.