## CHIN WING DONG v. CLARK, Attorney General.
### No. 1863.

District Court, W. D. Washington, N. D.
Feb. 18, 1948.

Edwards E. Merges, of Seattle, Wash., for petitioner.

J. Charles Dennis, U. S. Atty., and John E. Belcher, Asst. U. S. Atty., both of Seattle, Wash., for respondent.

BLACK, District Judge.

The petitioner has brought this proceeding in this court to obtain a judgment declaring that he is, and since his birth in China and entry thereafter in 1908 into the United States has been, a citizen of the United States. The action is brought pursuant to 8 U.S.C.A. § 903, being Sec. 503 of the Nationality Act of 1940.

The respondent by answer admits the allegations of the petition in part and denies the rest upon information and belief. The respondent's answer further "admits that the United States does not recognize petitioner as a citizen of the United States" and prays that the petitioner be denied relief.

The petitioner shortly before commencing this proceeding had been denied a certificate of derivative citizenship which he had made application for to the Commissioner pursuant to 8 U.S.C.A. § 739, which is referred to by the Department in its ruling as Sec. 339 of the Nationality Act of 1940.

In exhibit 1 admitted in this case and being one of the Immigration and Naturalization Department files relating to the petitioner, the position of the respondent

is set forth in a ruling dated September 23, 1947. In such it is stated:

"The certificate was denied because this Service was not satisfied that the petitioner had established the claimed relationship to a citizen. * * *

"The proceedings in the instant case is a mere denial of an application for a certificate of citizenship. The applicant does not allege any threat of deportation and such an allegation could be overcome by the showing that he has remained here many years without deportation proceedings being instituted against him. It is a case in which the Service is not satisfied whether the man is a citizen or not; hence, takes no steps to furnish him evidence that he is a citizen or any step towards deporting him as an alien. * * *

"In this case it is the function of the court to decide the question of fact as well as of law whether this petitioner is a citizen of the United States."

The position of the Department and the respondent as set forth therein is that the burden of proof is upon the petitioner to affirmatively establish his citizenship. And in conclusion it is stated in such ruling:

"Furthermore, if the decree of the court is that the petitioner is a citizen, the decree has the same effect as is given by section 327 of the Nationality Act of 1940 to a certificate of citizenship issued by the Commissioner under section 339 of that act."

■ It is alleged by the petitioner and conceded by respondent that the court has jurisdiction of the proceeding under said 8 U.S.C.A. § 903 aforesaid. This court coincides with such views as to its jurisdiction. The authority of the court under such section was declared in Brassert v. Biddle, Attorney General, 2 Cir., 148 F.2d 134, 136, where the court said:

"The District Court raised question of its own jurisdiction to proceed under 8 U.S.C.A. § 903, which provides for a judicial declaration that one is 'a national of the United States' upon denial of rights and privileges as such, pointing out that 'national' may be a more inclusive term than 'citizen.' But it concluded that its jurisdiction was complete under the Declaratory Judgments Act. 28 U.S.C.A. § 400; Perkins v. Elg, 307 U.S. 325, 350, 59 S.Ct. 884, 83 L.Ed. 1320, modifying and affirming 69 App.D.C. 175, 99 F.2d 408. While we agree that the latter Act might be a sufficient basis for the judgment we think it too narrow a reading of the procedure set forth in the Nationality Act itself to hold it unavailable here. One of the two statutory definitions of 'national of the United States' is 'a citizen of the United States,' 8 U.S.C.A. § 501(b), and, when nationality depends upon and is identical with citizenship, § 903 appears to be applicable according to its direct wording."

While the respondent's contention, as stated above, is that the burden of proof is upon the petitioner, the petitioner insists that the burden is upon the respondent.

■ The respondent, over petitioner's objection, introduced in evidence the Immigration and Naturalization files with respect to individuals coming from China after the admission of the petitioner in 1908. Theses subsequent Immigration and Naturalization files related to individuals whom the alleged father of the petitioner had sought to have admitted as his children and ultimately succeeded, at least as to four of them. In such later proceedings, to which the petitioner was not a party and concerning which he had no notice, the petitioner's alleged father and these various applicants all denied any kinship to or knowledge of this petitioner.

The petitioner, having been admitted in 1908 at San Francisco as the Chinese-born son of an American-born father, contends under Fong Lum Kwai v. United States, 9 Cir., 49 F.2d 19, and Chun Kock Quon v. Proctor, 9 Cir., 92 F.2d 326, that such subsequent files were wholly inadmissible.

As to such later files to which the petitioner was not a party it was the court's holding that such were admissible for what, if anything, they might be worth, not necessarily as evidence against the petitioner but at least for the purpose of explaining and clarifying the petitioner's exhibits 1, 2 and 3. Such were Immigration and Naturalization files in which were frequent references by representatives and of-

ficials of the Immigration and Naturalization Department to such subsequent files.

Had the petitioner offered only such portions of exhibits 1, 2 and 3 as did not refer to such subsequent files it would seem that respondent would not have been entitled to have them admitted.

In support of petitioner's contention that the burden of proof is upon the government to refute his citizenship the petitioner cites Choy Yuen Chan v. United States, 9 Cir., 30 F.2d 516; Lee Choy v. United States, 9 Cir., 49 F.2d 24, and Yuen Boo Ming v. United States, 9 Cir., 103 F.2d 355.

The respondent points out that as to this petitioner there never was a Board of Special Inquiry and that moreover in the instant proceeding petitioner is not merely resisting deportation but is seeking affirmative relief.

A statement of the facts in this case is decisive as to what the rule of law as to petitioner should be.

Chin Jeung, petitioner's alleged father, was adjudicated by the United States District Court at San Francisco in 1901 to have been an American-born citizen of Chinese ancestry. In August, 1908, the petitioner was admitted to the United States by the Commissioner of Immigration after considering the evidence and the showing then made, petitioner being admitted as a citizen of the United States and as the foreign-born son of said Chin Jeung, adjudicated citizen as above. Petitioner was then issued a certificate of identity. Subsequently during the First World War he registered for the draft as a citizen of the United States and was inducted into the Army as such. His Army status was brief, being terminated by what in effect was in a medical discharge.

After petitioner's admission as a citizen in 1908 and before 1919, Chin Jeung, the alleged father, endeavored to have admitted three other applicants as foreign-born sons of his and succeeded as to two. In such three proceedings and in two other proceedings after 1919 said Chin Jeung and such applicants denied any knowledge of or kinship to this petitioner.

In 1919 the petitioner, who at all times since his admission in 1908 had been living in the United States, made a petition to the Immigration Service for permission to depart for China and then to return to the United States. The Immigration Department, having before it the Immigration records of these three other applicants and such declarations of Chin Jeung denying his previous affidavit in 1908 that this petitioner was his son, refused such permission. Thereupon the entire case, including all of the records and files, both as to the petitioner and as to these three subsequent applicants, was referred to the Commissioner General of Immigration at Washington, D. C. On May 20, 1920, it was decided that the evidence established this petitioner's status as a son of an American-born citizen. His application for return certificate was approved, such was granted to him, and he departed for China. He returned to the United States in June, 1922, and remained in the United States until 1924, at which time he again applied for return certificate. The Immigration authorities granted such to him without question. He departed for China and returned to the United States the following year. At all times since he has remained continuously in the United States.

In 1938 petitioner having either secured or being offered a position on one of the ferries sailing the short distance from Seattle, Washington to Victoria, British Columbia, Canada, applied for return certificate so that he might accept such employment. He, however, was taken into custody and held three days as a prisoner. The Department claims that on the first day of such detention he withdrew his petition. Yet three days thereafter they had a further hearing, at which time he was still insisting that he was a citizen. Such return certificate being refused him and being without funds to prosecute his application further he apparently decided to abandon that request.

The Immigration and Naturalization Department felt his withdrawal or acquiescence in their position indicates strongly that he was not a citizen. But such does not so impress me. A man with the language limitations and financial lack of the

petitioner at that time, although being sure he was a citizen, might nevertheless decide to forego a chance for a job when his asking for a certificate to make it possible resulted in being deprived of his liberty. It is very natural that he might choose to end the detention and gain his freedom by the expedient of staying in Seattle rather than being kept in custody because he sought employment in ferry service between Seattle and Victoria.

In 1947 he applied as previously mentioned for the certificate of derivative citizenship from the Commissioner under 8 U.S.C.A. § 739, supra. Such application was unsuccessful and thereupon this proceeding was shortly started.

In the hearing upon such petition the Immigration files relating to the petitioner were put in evidence by him. In addition, he testified at length and submitted to much cross-examination. Moreover, he presented numerous exhibits, including testimony of reputable citizens, one of whom was the United States Collector of Customs. From all such testimony, records and other exhibits, it was established that the petitioner had not only registered for and been inducted in the United States Army during the First World War as a citizen of the United States but that he had at all times held himself out to be such a citizen and had been recognized as such by all with whom he came in contact except on some occasions by the Immigration and Naturalization Service as previously related. For instance, he bought and held title to real property, paid taxes, registered as a voter and regularly cast his ballot in the numerous elections. He established an excellent reputation as an honest, law-abiding citizen.

While the situation of this petitioner is not identical with the situations involved in Choy Yuen Chan v. United States, 9 Cir., 30 F.2d 516; Lee Choy v. United States, 9 Cir., 49 F.2d 24; and Yuen Boo Ming v. United States, 9 Cir., 103 F.2d 355, as referred to supra, I am much persuaded that substantially the same principle is at stake.

Inasmuch as this petitioner was admitted to the United States in 1908 as a citizen son of a citizen it seems far from fair that in 1948, or forty years later, he should be again required to assume the burden of proof in a hearing concerning his citizenship. The Department in 1919 and 1920 actually considered the alleged father's reversal of opinion as to the petitioner's being his son and it decided that problem then in favor of the petitioner. Therefore, there appears much merit in the contention that the Department and not the petitioner in 1948 should at least have the burden of proof. To hold in accord with the government on this phase would place every bona fide foreign-born child of American citizen parentage under a continuing hazard for life of guarding against the death and scattering of witnesses even though in the meantime from occasion to occasion his or her American citizenship might be established.

In this instance, however, I am not concerned with whether the burden of proof was technically upon the petitioner or upon the respondent. I observed the petitioner carefully during his several examinations on different days during the hearing. I observed his manner of testifying, his expression, considered the other evidence and exhibits, and from what I heard and saw and from the exhibits and records which I examined I am satisfied that the substantial preponderance of the evidence again establishes that the petitioner is the Chinese-born son of the American-born father, Chin Jeung, and that under the facts and the law applicable the petitioner is an American citizen.

I am mindful of some discrepancies. Having observed the petitioner on the stand I am also mindful of his language limitations. Considering all the aspects of the evidence and records I am satisfied that he is the American citizen he claims to be. The subsequent Naturalization files and records of the alleged children of said Chin Jeung in no wise in my opinion either legally or factually defeat petitioner's claim to citizenship. Such subsequent files introduced by the respondent have so many discrepancies between said alleged children and the various contentions of said Chin

652

Jeung as to make their denials of this petitioner's paternity and citizenship wholly unconvincing. In fact such files disclose that Chin Jeung himself some years after the petitioner's admission served a federal penitentiary sentence and that one of his "alleged" sons served a state penitentiary sentence. There were numerous discrepancies between them as to their respective rights to entry which were far more serious as to them than the tardy ones urged against petitioner.

Denials by such as they are not persuasive when compared with the convincing testimony and attitude of the petitioner.

I am mindful that in effect the Department merely argues against granting him the affirmative relief of decree of citizenship and that there has been no effort nor intention of deportation. In other words it is implied that the petitioner may live here, exercise the rights of citizenship, and even vote, but that the court should deny him a decree that he is the citizen that in fact he is. To require him to continue in the legal twilight of such uncertainty is neither fair to him nor worthy of this government.

In this case either the petitioner is a citizen or he is none. The preponderance of the evidence again gives proof he. is.

Therefore, it is only right that the citizenship he has repeatedly established be confirmed by appropriate decree under 8 U.S.C.A. § 903 aforesaid. As previously stated the respondent in its ruling dated December 23, 1947, has conceded that:

"The decree of the court * * * that the petitioner is a citizen * * * has the same effect as * * * a certificate of citizenship issued by the Commissioner * * *."

Appropriate findings and decree in conformity with this opinion may be presented after notice.